UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| SHAWN MILNER, | : | |
|---|---|---|
| *Plaintiff*, | : | CIVIL ACTION NO. |
| | : | 3:18cv1104 (JAM) |
| v. | : | |
| | : | |
| CITY OF BRISTOL *et al.*, | : | |
| *Defendants*. | : | |

## INITIAL REVIEW ORDER

Plaintiff Shawn Milner is a prisoner of the Connecticut Department of Correction. He has filed this federal action principally alleging that he was subject to the use of excessive force by numerous police officers in Bristol, Connecticut. In accordance with the initial review requirements of 28 U.S.C. § 1915A, I have reviewed his complaint and will allow it to proceed in part as to some of the named defendants.

## BACKGROUND

The complaint names the following defendants: the City of Bristol, the Bristol Police Department, and numerous Bristol police officials including Lieutenant Geoffrey Lund, Sergeant Rodney Gotowala, Officers Mark Kichar, Podlesney, Dustin DeMonte, Marino, and Jason Kasparian. *See* Doc. #1 at 10-11 (¶¶ 4-7) & at 14 (¶ 16).[1]

The following facts are assumed to be true solely for purposes of my initial evaluation of the adequacy of the allegations in the complaint. On April 11, 2018, Milner was traveling in the passenger seat of his fiancée's car when Officer Kichar pulled up behind the vehicle and without probable cause signaled Milner's fiancée to pull the car to the side of the road. *Id.* at 12 (¶ 10). After the vehicle stopped, Officer Kichar approached the passenger side of the vehicle and

---

[1] The complaint includes the first names for only some of the named defendants.

ordered Milner to get out. *Id.* (¶ 10). Officer Kichar attempted to grab Milner "in an extremely aggressive manner." *Id.* (¶ 11). Milner feared for his safety and attempted to "create some distance between himself" and Officer Kichar. *Id.*

At that point, another police vehicle driven by Officer Podlesney hit Milner and knocked him to the ground. *Id.* As he lay face down on the ground, Officers Kichar and Podlesney climbed on Milner's back and pinned his hands underneath him. *Id.* (¶ 12). Both officers began to strike Milner over the head repeatedly. *Id.* Officer DeMonte struck Milner on the back, and Officer Marino struck Milner on his legs multiple times before applying handcuffs to his wrists. *Id.* at 12-13 (¶ 12). After he was handcuffed, the four officers hit him several more times in the head. *Id.* at 13 (¶ 13). During the incident, Officers Kichar and Podlesney injured their hands. *Id.* at 16 (¶ 24).

Milner began to feel light headed and dizzy, and his vision became blurry. *Id.* at 13 (¶ 13). He recognized these symptoms as a sign that he was going to have a seizure. *Id.* He attempted to inform the officers at the scene about the possibility that he might have a seizure, but they told him to be quiet and put him in the back of a police car. *Id.* A short time later, Milner lost consciousness and suffered a "violent tonic clonic seizure." *Id.* (¶ 14). An ambulance transported Milner to Bristol Hospital for treatment of injuries that he had sustained to his chin, face, back, head and right arm. *Id.*

Milner alleges that he did not attempt to resist arrest and did not strike or fight the officers at the scene of his arrest. *Id.* (¶ 15). He claims that Officer Kasparian tried to justify the officers' brutal attack on him by writing an incident report falsely stating that Milner had fought with Officers Kichar and Podlesney. *Id.* at 13-14 (¶ 15).

After reviewing falsified reports written by Officers Kichar, Podlesney, DeMonte, and Kasparian, Sergeant Gotowala and Lieutenant Lund failed to reprimand them or otherwise remedy the situation; instead, they conspired to cover up their subordinates' misdeeds rather than redress them. *Id.* at 14 (¶¶ 16-17).

The City of Bristol did not attempt to prosecute the officers who used excessive force against Milner. *Id.* at 15 (¶ 20). The Mayor of Bristol made a statement to the media indicating that she would investigate the force used by the Bristol police officers against Milner, but never engaged in an investigation. *Id.* (¶ 21).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).[2]

---

[2] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make an initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367; *see also Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 165-66 (D. Conn. 2005). On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment after the defendants have been served. More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal

*Excessive force*

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Because the Fourth Amendment protects against unreasonable seizures, it has long been recognized that the Fourth Amendment is violated when the police use excessive force against a free person for the purpose of arresting or restraining his or her freedom of movement. *See, e.g., Graham v. Connor*, 490 U.S. 386 (1989).

The complaint alleges specific facts describing how Officers Kichar, Podlesney, DeMonte, and Marino all violently struck Milner without any legitimate or lawful reason to do so. These specific facts are adequate to support a plausible claim for the use of excessive force by each of these four defendants in violation of the Fourth Amendment. Accordingly, I will allow Milner's Fourth Amendment claim against Officers Kichar, Podlesney, DeMonte, and Marino to proceed.[3]

*False police reports*

Milner alleges that Officers Kichar, Podlesney, DeMonte, and Kasparian all issued false police reports in order to cover-up the use of excessive force. But "[t]he manufacture of false evidence, 'in and of itself,' ... does not impair anyone's liberty, and therefore does not impair anyone's constitutional right." *See Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000); *see also Jovanovic v. City of New York,* 486 Fed.Appx. 149, 152 (2d Cir. 2012) (noting that plaintiff must allege a deprivation of liberty that results from police officer's fabrication of evidence). Because

---

principle or if there are additional facts or circumstances that would warrant dismissal of a claim.
[3] Because Milner does not allege that he was a sentenced prisoner or pre-trial detainee at the time of his encounter with the police, his claim for excessive force is properly analyzed under the Fourth Amendment rather than under the due process clause of the Fourteenth Amendment or the cruel-and-unusual-punishment clause of the Eighth

4

the complaint does not allege additional facts to show that any deprivation of liberty or adverse consequences followed from the issuance of any false police reports, I will dismiss Milner's claims without prejudice insofar as they are predicated solely on the issuance of false police reports.

### *Supervisory liability*

A police officer is not individually liable under § 1983 for a violation of a plaintiff's constitutional rights under § 1983 unless the officer was personally involved in the alleged constitutional violation. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016); *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Absent such personal involvement, a supervisory police officer is not subject to vicarious or *respondeat superior* liability under § 1983 for the unconstitutional actions of his or her subordinates. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).

The complaint alleges that Sergeant Gotowala and Lieutenant Lund not only failed to reprimand their subordinates but also failed to properly supervise and train them. But the complaint does not allege that Sergeant Gotowala and Lieutenant Lund were present at the scene or were otherwise made aware that any of their subordinates engaged in the use of excessive force. *See Warren*, 823 F.3d at 136 (listing ways in which plaintiff may show personal involvement including if "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong" or if "the defendant exhibited deliberate indifference … by failing to act on information indicating that unconstitutional acts were occurring"). To the contrary, the complaint alleges that Sergeant Gotowala and Lieutenant Lunda were furnished

---

Amendment. *See Bryant v. Meriden Police Dept.*, 2017 WL 1217090, at *5–*6 (D. Conn. 2017).

false police reports, thus implicitly negating any plausible inference that they were aware of wrongdoing by their subordinates.

Although the complaint further alleges that Sergeant Gotowala and Lieutenant Lunda conspired with their subordinates, it alleges no facts to support this claim, and a complaint may not rely on solely conclusory allegations to support a claim of conspiracy. *See, e.g, Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (*per curiam*). Nor does the complaint make any non-conclusory allegations about the failure of Sergeant Gotowala and Lieutenant Lund to train or supervise their subordinates. Accordingly, I will dismiss Milner's claims without prejudice against Sergeant Gotowala and Lieutenant Lund for failure to allege facts establishing their personal involvement in any violation of Milner's right to be free from the use of excessive force under the Fourth Amendment.

*Municipal liability*

Milner names as defendants the City of Bristol and the Bristol Police Department. As to Milner's § 1983 claims against the Bristol Police Department, I will dismiss this claim with prejudice because a police department is not a "person" properly subject to suit under § 1983. *See, e.g., Petaway v. City of New Haven Police Dep't*, 541 F. Supp. 2d 504, 510 (D. Conn. 2008).

As to Milner's § 1983 claim against the City of Bristol, a municipality is not liable under a theory of *respondeat superior* for the unconstitutional actions of its employees; instead, a municipality may be liable only if an officer's violation of a plaintiff's constitutional rights was caused by a municipal policy, practice, or custom, or if it was caused by a municipality's deliberate indifference and inaction in light of a history of prior similar constitutional

deprivations by municipal officers. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978); *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018).

Here, the complaint alleges solely conclusory allegations against the City of Bristol with respect to its policies and with respect to any causal link between those policies and the use of excessive force against Milner by any of the individual police officer defendants. Such conclusory allegations are not enough to sustain a claim for municipal liability under § 1983. *See, e.g., Allen v. Antal,* 665 F. App'x 9, 14 (2d Cir. 2016); *Moore v. City of Norwalk,* 2018 WL 4568409, at *4, *9-*10 (D. Conn. 2018). Accordingly, I will dismiss Milner's § 1983 claim against the City of Bristol without prejudice.

## Conclusion

Plaintiff Milner's § 1983 claim for the use of excessive force in violation of the Fourth Amendment may proceed against defendants Officers Kichar, Podlesney, DeMonte, and Marino. Milner's related state law claims against these defendants for assault and battery may also proceed. All other claims against the named defendants in this action are dismissed with or without prejudice as indicated in this ruling. If Milner believes there are additional facts he can allege that will overcome any of the deficiencies identified in this ruling, then he may file a proposed amended complaint within 30 days.

The Court enters the following orders:

(1) Within twenty-one (21) days of this Order, the Clerk shall mail: a waiver of service of process request packet, including a copy of the complaint and this order to each of the following defendants in his individual capacity at the Bristol Police Department, 131 North Main Street, Bristol, Connecticut 06010: Officer Mark Kichar, Officer Podlesney, Officer Dustin

DeMonte, and Officer Marino. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) Defendants Kichar, Podlesney, DeMonte, and Marino shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(3) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by February 17, 2020. Discovery requests need not be filed with the court.

(4) All motions for summary judgment shall be filed by March 18, 2020.

It is so ordered.

Dated at New Haven this 21st day of August 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge